SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey  07102-5400
(973) 643-7000
Attorneys for Plaintiff
Cambridge Educational Center, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAMBRIDGE EDUCATIONAL CENTER, INC., d/b/a C2 EDUCATION CENTERS, INC., | Civil Action No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| SON HWA YI a/k/a SONIA YI and UNITED YOUNG ARTIST FOUNDATION INC., | Civil Action |
| Defendants. | (Electronically Filed Document) |

Plaintiff Cambridge Educational Center, Inc., d/b/a C2 Education Centers, Inc.

("Plaintiff"), by and through its undersigned attorneys, Sills Cummis & Gross P.C., as and for its

Complaint against Defendants Son Hwa Yi (a/k/a Sonia Yi) ("Yi") and United Young Artist

Foundation Inc. ("UYAF") (Yi and UYAF shall be collectively referred to herein as

"Defendants"), alleges as follows:

### INTRODUCTION

1.      This action arises from a former employee's breaches of her confidentiality and

non-competition agreement with Plaintiff by operating a personal tutoring business with UYAF

that competes directly with her former employer's business.  In addition, Defendant Yi has

violated her fiduciary duties to Plaintiff, breached a loan agreement and misappropriated monies

owed to Plaintiff.  Defendants have further misappropriated Plaintiff's trade secrets and other

confidential and proprietary business information, and used that information to unfairly compete with Plaintiff, solicit Plaintiff's customers, and tortiously interfere with Plaintiff's business relationships, among other things.

## THE PARTIES

2.      Plaintiff is a Maryland corporation with its principal place of business located at 6455 East John's Crossing, Suite 402, Duluth, Georgia 30097.  At all relevant times, Plaintiff operated a tutoring center in Livingston, New Jersey, among other places.

3.      Upon information and belief, Defendant Yi is a resident of the State of New Jersey residing at 67 Chapin Road, Pine Brook, New Jersey 07058.  Defendant Yi is a former employee of Plaintiff, and was formerly the director responsible for operating Plaintiff's tutoring center located in Livingston, New Jersey.

4.      Upon information and belief, Defendant UYAF is a New York corporation with its principal place of business in New Jersey, having addresses at 2 East Northfield Road, Suite #2, Livingston, New Jersey 07039 and 155 Livingston Ave., Suite #6, Livingston, New Jersey 07039.  Upon information and belief, UYAF was founded and is operated by Yi and provides personal tutoring services in competition with Plaintiff.

## JURISDICTION AND VENUE

5.      This Court has diversity subject matter jurisdiction over all of the claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      In addition, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 with respect to the copyright claim and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining claims.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because Defendant Yi is a resident of Pine Brook, Morris County, New Jersey and works in Livingston, Essex County, New Jersey, and Defendant UYAF has its principle place of business in Livingston, Essex County, New Jersey, and a substantial part of the events and omissions giving rise to Plaintiff's claims herein occurred in this district.

## FACTUAL ALLEGATIONS

**A.     Plaintiff's Business And Confidential Information**

8.     Plaintiff provides personal tutoring services to approximately 12,000 elementary, middle and high school students nationwide, to prepare them for standardized achievement tests, including but not limited to the PSAT, SAT, and the ACT.  Plaintiff operates 110 educational support centers and employs approximately 440 tutors.

9.     With the help of its confidential and propriety materials, Plaintiff offers customized curricula, personalized attention and a wide variety of enrichment services for its students.

10.     Plaintiff has licensed others to operate tutoring service businesses identified with the C2 marks, and to utilize Plaintiff's confidential methods and procedures developed by C2 for the operation of C2 Educational Centers.

11.     In connection with the operation of its business, Plaintiff has developed at its own time and expense, confidential and proprietary customer lists, pricing policies, methods of operation, tutoring methods and techniques, training manuals and other training materials, computer programs and other trade secrets and confidential information (the "Confidential Information").

12.     Plaintiff's Confidential Information includes, among other things, Plaintiff's confidential and proprietary manuals for training employees, such as center directors, to market and run a C2 Center, computer programs developed by Plaintiff to enable its employees to place students in the appropriate designated categories in order to develop an individualized plan of study for each student, and confidential and proprietary curricula.

13.     Plaintiff's Confidential Information also includes recruiting techniques developed by Plaintiff to recruit successful and accomplished tutors, lists of Plaintiff's students, and Plaintiff's operational methods and business plans.

14.     Plaintiff developed the Confidential Information through its own considerable time and expense and its value is in excess of $75,000.  The Confidential Information is not available through public sources, and it is not known to, or readily ascertainable through proper and legal means, by other persons.  The Confidential Information provides Plaintiff with a competitive advantage over its competitors.

15.     Plaintiff uses the Confidential Information solely to pursue its own business interests.  To this end, Plaintiff entrusts the Confidential Information to its employees, who Plaintiff trains at its own expense.

16.     Plaintiff's employees are only granted access to, and are permitted to use, the Confidential Information solely for Plaintiff's benefit and for no other purpose.

17.     Plaintiff exercises reasonable efforts to protect the confidentiality and secrecy of its Confidential Information and takes measures to prevent its disclosure and misappropriation.

18.     These efforts include, without limitation, requiring its employees to execute non-competition and non-disclosure agreements pursuant to which the employee agrees not to compete against Plaintiff for a limited period following termination of employment, for any

reason, barring the employee from using or disclosing Plaintiff's Confidential Information, and requiring the employee to return the Confidential Information to Plaintiff upon termination.

**B.**     **Yi's Employment With Plaintiff And The Non-Competition Agreement**

19.     Defendant Yi was employed by Plaintiff from September 8, 2009 to September 11, 2010 as a center director.  In that capacity, Yi was responsible for operating Plaintiff's C2 Center in Livingston, New Jersey (the "Livingston Center").

20.     During Yi's employment with Plaintiff, she had access to Plaintiff's Confidential Information.  Yi was granted access to Plaintiff's Confidential Information, and was permitted and authorized to use it, solely for the purposes of operating Plaintiff's Livingston Center.

21.     Because of the highly competitive nature of Plaintiff's business, and to maintain its competitive position, it is imperative that Plaintiff protect its Confidential Information.  As mentioned, to do so, Plaintiff, among other things, requires its employees to execute non-competition agreements.

22.     As a condition of, and in consideration for, her employment with Plaintiff, Yi entered into a Non-Competition Agreement (the "Agreement") with Plaintiff.  A copy of the Agreement is attached hereto as Exhibit A.

23.     Pursuant to Section 1 of the Agreement, "Protection of Confidential Information," Yi agreed not to disclose Plaintiff's Confidential Information or use it for her own benefit or the benefit of any other person:

> [Yi] agrees . . . that [she] will keep all confidential and proprietary information of [Plaintiff] . . . or relating to its business (including, but not limited to, information regarding [Plaintiff's] customers, pricing policies, methods of operation, proprietary computer programs and trade secrets) confidential, and that [Yi] will not (except with [Plaintiff's] prior written consent), while in the employ of [Plaintiff] or thereafter, disclose any such confidential information to any person, firm, corporation, association or other

entity, other than in furtherance of [her] duties hereunder, and then only to those with a "need to know."  [Yi] shall not make use of any such confidential information for [her] own purposes or for the benefit of any person, firm, corporation, association or other entity (except [Plaintiff]) under any circumstances during or after the term of [her] employment . . . .

The Employee recognizes that because [her] work for [Plaintiff] will bring [her] into contact with confidential and proprietary information of [Plaintiff], the restrictions of this Article 1 are required for the reasonable protection of the Company and its investments and for [Plaintiff's] reliance on and confidence in the Employee.

24.     Yi also agreed pursuant to Section 1 of the Agreement to return to Plaintiff all

Confidential Information provided to her by Plaintiff upon termination of her employment:

The Employee agrees that, upon termination, for any reason, [she] will immediately cease to use any of [Plaintiff's] Confidential Information and Marks in any business or otherwise and return . . . all copies of Operations Manual[s] and any other confidential materials, including, without limitation, computer software and mechanisms . . . used to access the software . . . .

25.     Yi also agreed pursuant to Section 2 of the Agreement that, for twenty-four

months after termination, she would not engage in any business activities on behalf of a company

that competes with Plaintiff, or own, directly or indirectly, an interest in such a company:

Either during the employment term or during the twenty-four (24) months from the time the Employee's employment is terminated, the Employee hereby agrees that [she] will not engage in any business activities on behalf of any enterprise (the "Competitive Business") which competes with the Company in the business of educational services; including but not exclusive to tutoring, academic counseling, publishing, online tutorials; but excluding teaching at public schools or universities as long as such teaching does not involve test preparation or individualized tutoring, which shall be deemed a "Competitive Business."  Furthermore, the Employee will not have any direct or indirect interest . . . as a disclosed or beneficial owner, investor, partner, director, officer, employee in a management or sales capacity, consultant, representative or agent or in any other capacity in any Competitive Business operating:  (i) at the Location; (ii) within twenty five (25)

6

miles of the Location; or (iii) within five (5) miles of any other C2® Educational Centers business in operation or under construction [on] the date on which a person restricted by this Article complies with this Article; or on the date which the Employee terminates his employment, whichever is later.

26.     Yi also agreed pursuant to Section 2 of the Agreement that for five years following termination, should would not to solicit Plaintiff's employees or its present or prospective clients:

The Employee agrees that he shall not, for a period of five years from the time his employment ceases (for whatever reason):  (i) solicit any employee or full-time consultant of the Company for the purposes of hiring or retaining such employee or consultant; or (ii) contact any present or prospective client of the Company to solicit such a person to enter into a management contract with any organization other than the Company or a related entity.

27.     Pursuant to Section 3 of the Agreement, Yi acknowledged and agreed "that it would be difficult to fully compensate the Company for damages resulting from a breach or threatened breach of the covenants set forth in Articles 1 and 2 of this Agreement and accordingly agrees that the Company shall be entitled to temporary and injunctive relief . . . ."

## C.     Yi's Poor Job Performance, Misconduct And Termination

28.     During her employment with Plaintiff, Yi had low sales revenue and was chronically late for work, which prevented the Livingston Center from opening on time for its students, causing Plaintiff to lose business and damaging Plaintiff's reputation and good will.

29.     Despite receiving warnings from Plaintiff about her poor job performance, Yi's job performance did not improve.  Accordingly, on or about September 11, 2010, Plaintiff terminated Yi's employment.

30.     Subsequently, in or about September 2010, Plaintiff uncovered evidence that Yi had engaged in multiple acts of misconduct while she was director of the Livingston Center.

31.     First, Plaintiff discovered that Yi had illegally diverted tuition payments payable to Plaintiff for her own personal use.

32.     As a director of the Livingston C2 Center, Yi was responsible for collecting tuition payments (payable by cash, check or credit card) from Plaintiff's students.

33.     As part of her scheme, Yi would ask students' parents to split tuition payments between cash, check or credit card.  Yi would then divert the portion of the tuition paid by cash or check and then would not report the cash/check payment to Plaintiff's accounting department. Yi asked some students' parents for a higher tuition amount to enable her to divert the funds above the actual tuition.

34.     In other instances, Yi merged payments for different months and methods of payment together to make it appear that all payments had been credited to the account in question.  In some cases, Yi would not provide parents with a receipt for portions of payments they made, or would fail to place a copy of the receipt or contract in Plaintiff's files.

35.     For example, in or about June 7, 2010, when the parents of student Jennifer Seo ("Seo") attempted to pay the Plaintiff's tuition fee to Yi by credit card, Yi demanded that Seo's parents pay part of the tuition by an undated check in an amount that exceeded the tuition fee by $500.  Yi did not report the check to Plaintiff.  Upon information and belief, Yi deposited the check in her own account on or about June 7, 2010 and kept this money for herself by back-dating the check to May 22, 2010.

36.     On another occasion, student Jay Patel made Plaintiff's tuition payments to Yi in multiple monthly installments in the aggregate amount of $11,400.  Yi failed to deposit these cash payments into Plaintiff's account.  Upon information and belief, Yi kept this money for herself.

37.     On another occasion, on or about July 29, 2010, a student renewed her enrollment at Plaintiff's Livingston Center, and paid the total tuition of $3,300 to Yi in cash.

38.     When Plaintiff attempted to confirm the student's claim that the tuition had been paid in full, Plaintiff could not locate the signed renewal contract in its files at the Livingston Center and there was no daily report or receipt for the payment.

39.     The student's mother provided a copy of the contract to Plaintiff confirming that the $3,300 tuition payment had been made but had not been delivered to Plaintiff.

40.     Plaintiff was eventually able to document approximately $13,000 in tuition payments that had been diverted during the time that Yi was responsible for collecting tuition as director of Plaintiff's Livingston Center.

41.     Plaintiff also discovered that Yi had schemed to misappropriate Best Buy gift cards that Plaintiff was presenting to its students as a promotion.

42.     In or about November 2009, Yi requested six gift cards for the November 2009 promotion, purportedly to present to six of Plaintiff's students.  Subsequently, Plaintiff learned from the parents for at least two of the students that the students never received the gift cards.

43.     On October 2, 2010, Plaintiff sent Yi a letter detailing Yi's suspected misconduct and requesting Yi to respond to the allegations.

44.     On or about November 28, 2010, Plaintiff notified the Livingston Police Department about Yi's theft of tuition funds and gift cards, which conducted an investigation of Plaintiff's claims.

45.     Subsequently, upon information and belief, the Essex County Prosecutor's Office ("Prosecutor") approved Yi for entry into the pretrial intervention program, allowing Yi to avoid criminal charges and prosecution.  Under the terms of her pretrial intervention, Yi and the

Prosecutor entered into an agreement pursuant to which Yi is required to make payments of restitution to Plaintiff over a certain period of time, as set forth more fully therein.

**D.     Yi's Unlawful Competition, Misappropriation Of Plaintiff's Confidential Information And Other Violations Of The Agreement**

46.     In or about October 2010, Plaintiff learned that Yi has failed to honor her contractual obligations under the Agreement by, among other things, engaging in ongoing unlawful competition against Plaintiff both during her employment with Plaintiff, and within the 24-month post-employment non- competition period, by misappropriating Plaintiff's Confidential Information, by improperly soliciting Plaintiff's students and employees, and by otherwise engaging in other unlawful interference with Plaintiff's business and business relationships.

47.     Following her termination, Yi opened a competing tutoring facility at UYAF in Short Hills, New Jersey.  Upon information and belief, Yi is currently operating UYAF in Livingston, NJ.  As of December 7, 2011, the UYAF website identifies Yi as its "Executive Director, chairman of the Board and the Founder."

48.     Upon information and belief, and according to its own website as of December 7, 2011, UYAF provides personal educational tutoring and counseling services to students to prepare them for standardized achievement tests, including but not limited to the SAT and ACT, and that "9th -12th  graders get to experience the ACT or SAT college entrance exam and prepare collage [sic] entrance."

49.     Upon information and belief, UYAF is currently in direct competition with Plaintiff by operating a tutoring and test preparation program of its own that is directed by Yi.

50.     Upon information and belief, UYAF did not operate a tutoring or test preparation program prior to Yi's termination by Plaintiff.

51.     Upon information and belief, the UYAF tutoring programs are located at 155 South Livingston Ave. #6, Livingston, New Jersey and/or 2 East Northfield Road, Suite #2 Livingston, New Jersey.

52.     Both of these locations are within approximately one mile from Plaintiff's Livingston Center and are, in any event, well within the 25-mile non-compete geographic area in the Agreement.

53.     Yi initiated her wrongfully competing tutoring programs at a UYAF location at 150 John F. Kennedy Parkway, Suite #100, Short Hills, New Jersey at some time following her termination by Plaintiff.  Upon information and belief, this Short Hills location recently moved to Livingston.

54.     According to UYAF's website, Yi is executive director, chairman of the board and a founder of UYAF.  By operating UYAF's personal tutoring and counseling services, Yi is engaging in business activities on behalf of a competing business in violation of her non-compete obligations under the Agreement.

55.     In fact, Yi's unlawful competition began while she was still employed by Plaintiff.  Specifically, in or around early September 2010 (just prior to her termination), Yi solicited one of Plaintiff's students who was also employed as a tutor by Plaintiff, Sean Kim (a/k/a Pyong Ho Kim) ("Kim").

56.     While still employed by Plaintiff, Yi told Kim that she was planning on opening a new tutoring center and offered him a job there as a tutor when it opened.

57.     In or around early October 2010, after Yi's termination, Kim called Yi to discuss the job offer, which he eventually accepted.

58.     As Kim confirmed to Plaintiff, Yi is the founder and director of UYAF's Livingston tutoring center, which is offering tutoring services in direct competition with Plaintiff.

59.     Yi's unlawful competition also includes her misappropriation and misuse of Plaintiff's Confidential Information, including but not limited to, Plaintiff's training manuals, confidential and proprietary computer programs, student lists, curriculum, and other materials.

60.     Upon information and belief, Yi failed to return Plaintiff's Confidential Information upon termination of her employment with Plaintiff and schemed to misappropriate Plaintiff's Confidential Information to enable her and UYAF to form and operate a competing business within proximity to Plaintiff's Livingston Center upon termination of her employment, and in order to obtain a competitive advantage over Plaintiff.

61.     On Kim's first day of work for Yi and UYAF, Kim noticed that UYAF written materials contained Plaintiff's mark and logo.

62.     When Kim mentioned the presence of the C2 mark on the UYAF material to Yi, Yi used "white out" to erase the mark in front of Kim.

63.     Kim also witnessed that Yi misappropriated other Confidential Information, including at least one proprietary computer program developed by Plaintiff.  This program allows Plaintiff to determine a student's strengths and weaknesses on standardized tests to develop a customized curriculum for the individual student to improve on his or her areas of weakness.

64.     While at UYAF, Kim observed that Yi had misappropriated a copy of this program and used it in connection with the tutoring of at least one UYAF student.

65.     Kim also observed that Yi had a flash drive that contained vast amounts of Plaintiff's Confidential Information, including but not limited to, information regarding Plaintiff's students.

66.     After personally witnessing Yi's misappropriation of Plaintiff's Confidential Information, Kim became uncomfortable, eventually resigned from UYAF and informed Plaintiff of Yi's misconduct.

67.     Yi's unlawful conduct also includes unlawful solicitation of Plaintiff's students and employees in violation of the non-solicitation covenant in Section 2 of the Agreement.

68.     As described above, Yi unlawfully solicited at least one of Plaintiff's tutors, Sean Kim, to leave Plaintiff and work for Yi and UYAF.

69.     In addition, the tutor observed at least one of Plaintiff's students at UYAF that, upon information and belief, Yi had improperly solicited to leave Plaintiff and sign-up for tutoring services with UYAF.  Upon information and belief, Yi has solicited additional students and potential students of Plaintiff as well.

**E.      Yi Refuses To Cease Violating The Agreement And Comply With Her Contractual And Common law Obligations**

70.     Plaintiff has attempted to obtain the return of its confidential trade secrets from Yi and to obtain compliance with the Agreement without resorting to formal legal proceedings.

71.     When Plaintiff's reasonable efforts to obtain Yi's (and UYAF's) compliance with the Agreement failed, Plaintiff filed suit in Georgia federal court against Yi and UYAF to enforce the Agreement, among other things.  That suit was recently dismissed without prejudice on jurisdictional grounds upon Yi's and UYAF's motion for improper venue.

72.     Yi has changed her home address and UYAF locations since her termination from Plaintiff.  Upon information and belief, Defendants' address changes have been made, among

other things, with the intent to make it difficult for Plaintiff to initiate formal legal proceedings against them.

73.     To date, Defendants have refused to return Plaintiff's Confidential Information and Yi has refused to abide by her contractual and common law obligations to Plaintiff.

## COUNT I
### (Breach of Contract against Defendant Yi)

74.     Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

75.     Plaintiff Yi and Plaintiff entered into the Non-Competition Agreement.

76.     The Non-Competition Agreement is a valid and binding contract supported by valid and adequate consideration.

77.     The Agreement is reasonable, consonant with public policy, imposes no undue hardship on Yi, and is necessary to protect Plaintiff's legitimate business interests.

78.     Pursuant to Section 1 of the Agreement, Yi is barred from using or disclosing Plaintiff's Confidential Information, and was required to cease using and to return to Plaintiff all the Confidential Information once her employment with Plaintiff was terminated for any reason.

79.     Pursuant to Section 2 of the Agreement, Yi is barred for twenty-four months following her termination from owning, operating or engaging in any business activities on behalf of any entity that competes with Plaintiff within 25 miles of the Livingston Center.

80.     Plaintiff fully performed its contractual obligations under the Agreement.

81.     Despite Plaintiff's performance of its obligations, Defendant Yi has failed to abide by the terms of the Agreement.

82.     Yi has materially breached the Agreement by, among other things, competing against Plaintiff during the post-employment restricted period by engaging in, having a direct interest in, and operating a competing business within 25 miles of Plaintiff's Livingston Center.

83.     Yi has further materially breached the Agreement by misappropriating, disclosing, and using for her own and for UYAF's benefit, to Plaintiff's detriment, Plaintiff's Confidential Information.

84.     Yi has further materially breached the Agreement by soliciting Plaintiff's employees for the purpose of hiring Plaintiff's employees at UYAF.

85.     Yi has further materially breached the Agreement by soliciting present and/or prospective clients of Plaintiff.

86.     As a direct and proximate result of Yi's breaches of the Agreement, Plaintiff has suffered, and continues to suffer, immediate, substantial and irreparable injury and monetary damages.

<u>**COUNT II**</u>
**(Breach of Loan Agreement Against Defendant Yi)**

87.     Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

88.     On or about April 12, 2010, Plaintiff agreed to loan Yi the principal amount of $3,000.00 (the "Loan").

89.     As evidence of the Loan, Plaintiff executed and delivered to Plaintiff a loan agreement (the "Loan Agreement"), dated April 12, 2010, in the principal amount of $3,000.00, payable pursuant to the terms and conditions set forth therein.  A copy of the Loan Agreement is attached hereto as <u>Exhibit B</u>.

90.     Plaintiff advanced the full amount of the Loan to Yi contemporaneous with Yi's execution and delivery of the Loan Agreement.

91.     Pursuant to the terms of the Loan Agreement, Yi promised to repay the Loan by making consecutive monthly payments to Plaintiff in the amount of $500.00 beginning May 2010.

92.     Yi made a $500 payment on or about June 29, 2010 and another $500 payment on or about July 22, 2010.  Yi has failed to make any payments since that time.

93.     Plaintiff deducted an additional $500 from Yi's incentive bonus pay for one of Yi's missed payments.

94.     Yi defaulted under the Loan Agreement by failing to make the required monthly payments when due, beginning in or about August 2010, and has failed to cure said defaults.

95.     Yi currently still owes Plaintiff $1,500.00 pursuant to the Loan Agreement and remains in default on the Loan to this day.

96.     The Loan Agreement is a valid and binding contract.

97.     Plaintiff has fully performed its obligations under the Loan Agreement.

98.     Yi materially breached the Loan Agreement by failing to make the required monthly payments to Plaintiff when due.

99.     As a direct and proximate result of Yi's breach, Plaintiff has been damaged.

**COUNT III**
**(Misappropriation of Confidential Information**
**and Trade Secrets against All Defendants)**

100.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

101.    Yi has contractual and common law obligations not to use or disclose Plaintiff's Confidential Information for her benefit or the benefit of any other person or entity other than Plaintiff.

102.    Yi has contractual and common law obligations to cease using and to return the Confidential Information to Plaintiff upon the termination of her employment, including but not limited to Plaintiff's training manuals, computer programs, student lists, curricula, and operational methods.

103.    Yi was granted access to the Confidential Information in confidence due to her position as director of Plaintiff's Livingston Center, and solely for the purposes of operating the Livingston Center.

104.    Plaintiff is the rightful owner of the Confidential Information, which Plaintiff developed through the expenditure of considerable time and expense.

105.    The Confidential Information has independent economic value and is not available through public sources, and it is not generally known to, or readily ascertainable through proper and legal means, by other persons.

106.    Plaintiff has a legitimate interest in maintaining the confidentiality of its Confidential Information, including, without limitation, protecting its competitive advantage over its competitors and protecting its considerable investment of time and money expended in developing its Confidential Information.

107.    Plaintiff has made and continues to make reasonable efforts to maintain the secrecy of this Confidential Information and trade secrets, including but not limited to the signing of confidentiality agreements by Plaintiff's employees.

108.    Yi and UYAF have misappropriated, and are continuing to misappropriate, Plaintiff's Confidential Information and trade secrets, by failing to return and/or utilizing for their own behalf, *inter alia*, Plaintiff's training manuals, computer programs, student lists, curricula, operational methods, and other materials.

109.    Upon information and belief, and because Yi is a Founder, Executive Director and Chairman of the Board of UYAF, UYAF knew or should have known that Yi had improperly obtained Plaintiff's Confidential Information through a breach of the Agreement and of Plaintiff's confidence in Yi, yet knowingly and wrongfully used, and continues to use, Plaintiff's Confidential Information, to the detriment of Plaintiff, to obtain a competitive advantage.

110.    Upon information and belief, Yi and UYAF continue to use and disclose Plaintiff's trade secrets without the express or implied consent of Plaintiff, for their own benefit. Such use constitutes a breach of the Agreement and common law.

111.    Yi and UYAF's misappropriation was and is willful, improper, intentional and malicious.

112.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and continues to suffer, immediate, substantial and irreparable injury and monetary damages, including but not limited to attorneys' fees and costs, lost business, and loss of good will. Plaintiff will continue to suffer this harm unless and until Yi and UYAF are restrained from their current and intended conduct.

## COUNT IV
### (Breach of Duty Loyalty against Defendant Yi)

113.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

114.     Yi, as the former director of Plaintiff's Livingston Center, owes Plaintiff a duty of loyalty, which, among other things, prohibits Yi from taking affirmative steps to injure Plaintiff's business.

115.     While still employed by Plaintiff, Yi was granted access to Plaintiff's Confidential Information solely due to her position of trust and confidence as director of Plaintiff's Livingston Center and was required to use the Confidential Information solely for Plaintiff's benefit for the purposes of operating the Livingston Center.

116.     Yi materially breached her duty of loyalty by, among other things, misappropriating Plaintiff's legally protected Confidential Information during the time of her employment with Plaintiff, for the unlawful and wrongful purpose of starting and operating a competing business within proximity to Plaintiff's Livingston Center in order to obtain a competitive advantage over Plaintiff.

117.     Yi further materially breached her duty of loyalty by, among other things, soliciting Plaintiff's employees during the time of her employment with Plaintiff, for the unlawful and wrongful purpose of starting and operating a competing business within proximity to Plaintiff's Livingston Center in order to obtain a competitive advantage over Plaintiff.

118.     Yi further materially breached her duty of loyalty by, among other things, soliciting business and Plaintiff's clients during the time of her employment with Plaintiff, for the unlawful and wrongful purpose of starting and operating a competing business within proximity to Plaintiff's Livingston Center, in order to obtain a competitive advantage over Plaintiff.

119.    Yi failed to act solely for the benefit of Plaintiff and instead acted contrary to Plaintiff's interests, as well as in her own self-interest and the interests of UYAF during her tenure of employment with Plaintiff.

120.    Yi's actions were done intentionally and in bad faith.

121.    As a direct and proximate result of Yi's actions, Plaintiff has suffered, and continues to suffer, immediate, substantial and irreparable injury and monetary damages.

## COUNT V
### (Unfair Competition Against All Defendants)

122.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

123.    Yi misappropriated Plaintiff's Confidential Information in bad faith for the sole purpose of starting a competing venture, at UYAF, and to gain a competitive advantage over Plaintiff following her termination.

124.    Yi only had access to Plaintiff's Confidential Information by virtue of her position of trust and confidence as a director of Plaintiff's Livingston Center.

125.    UYAF knowingly and wrongfully in bad faith used Plaintiff's Confidential Information to the detriment of Plaintiff to obtain a competitive advantage despite its knowledge that Yi had wrongfully obtained the Confidential Information through violations of her contractual and common law obligations to Plaintiff.

126.    Defendants conspired to misappropriate Plaintiff's Confidential Information to enable them to unfairly compete with Plaintiff.

127.    The actions and conduct of Defendants described above, including, without limitation, misappropriating Plaintiff's Confidential Information for Defendants own commercial advantage of a benefit or a property right belonging to Plaintiff, amounts to unfair competition.

Plaintiff will continue to suffer this harm unless and until Yi and UYAF are enjoined from their current and intended conduct.

128.    Defendants knew or should have known that their actions would damage Plaintiff.

129.    As a direct and proximate result of Defendants' unfair actions, Plaintiff has suffered, and continues to suffer, immediate, substantial and irreparable injury and monetary damages.

130.    Defendants committed their actions knowingly, willfully, and in conscious disregard or Plaintiff's rights.  Accordingly, Plaintiff is entitled to recover actual and punitive damages in an amount to be determined at trial.

**COUNT VI**
**(Tortious Interference with Prospective**
**Economic Advantage Against UYAF)**

131.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

132.    Plaintiff possessed, and continues to possess, a reasonable expectation of economic advantage/relationships with its clients that may be lost as a direct result of the actions of Yi and UYAF.

133.    UYAF had knowledge of Plaintiff's prospective economic advantages in the vicinity of Plaintiff's Livingston Facility because, among other things, Yi is a Founder, Executive Director and Chairman of the Board of UYAF.

134.    UYAF has wrongfully and intentionally interfered with Plaintiff's economic interests by, among other things, unfairly competing against Plaintiff through the knowledge and efforts of Yi, in knowing violation of her common law and contractual obligations to Plaintiff,

and by improperly utilizing Plaintiff's Confidential Information despite its knowledge that such information was obtained wrongfully.

135.    UYAF acted intentionally, with malice and without justification or excuse.

136.    If not for UYAF's unlawful and tortious actions, there was a reasonable probability that Plaintiff would have received the anticipated economic benefits.

137.    As a direct and proximate result of UYAF's actions, Plaintiff has suffered, and continues to suffer, immediate, substantial and irreparable injury and monetary damages.

## COUNT VII
### (Civil Conspiracy Against All Defendants)

138.    Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

139.    Yi and UYAF entered into a real agreement or confederation with a common design to perpetuate an overt unlawful act against Plaintiff.

140.    The purpose of Defendants' agreement or confederation was unlawful and was to inflict an injury upon Plaintiff.

141.    Defendants have acted in concert in committing real, overt, and tortious acts in furtherance of their real agreement or confederation, including but not limited to misappropriation of trade secrets and confidential information, unfair competition, and tortious interference with prospective economic advantage.

142.    Defendants' acted knowingly, wilfully, wantonly, and/or with reckless disregard of Plaintiff's rights.

143.    As a direct and proximate result of Defendants' real, overt, and tortious acts in furtherance of the conspiracy, Plaintiff has suffered, and continues to suffer, immediate, substantial and irreparable injury and monetary damages.

## COUNT VIII
### (Copyright Infringement against All Defendants)

144.   Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs as if fully set forth at length herein.

145.   Plaintiff created original works, namely its proprietary computer program and manual for instructing students (the "Works").

146.   At all relevant times, Plaintiff was and is the sole and exclusive owner of all right, title and interest in, to and/or under the Works, including but not limited to the copyrights in and to the Works.

147.   Pursuant to such sole and exclusive rights, Plaintiff has distributed the Works to its employees solely for the purposes of tutoring students in preparation for standardized tests.

148.   Upon information and belief, Defendants misappropriated the Works, erased Plaintiff's logos and marks, and replaced them with UYAF's marks to pass the Works off as UYAF works (the "Infringing Works").

149.   Upon information and belief, the Infringing Works were created by Yi and/or persons at UYAF acting at her direction or on her behalf.

150.   One student saw Plaintiff's copyrighted materials at UYAF when he was recruited to sign-up at UYAF. When the student mentioned Plaintiff's logos in UYAF's materials, Yi used "white out" to erase the logos in front of the student.

151.   Defendants have infringed, and continue to infringe, Plaintiff's copyright in the Works by "creating" the Infringing Works, which are identical to Plaintiff's Works, by using the Infringing Works in connection with offering tutoring services at UYAF in competition with Plaintiff, and by copying and distributing Plaintiff's Works, without Plaintiff's consent or a license.

152.    Defendants acted knowingly, wilfully, wantonly, and/or with reckless disregard of Plaintiff's rights.

153.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and continues to suffer, immediate, substantial and irreparable injury and monetary damages.

**WHEREFORE**, Plaintiff Cambridge Educational Center, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and/or severally, as follows:

A.    Permanently enjoining Defendants from using, disclosing or otherwise misappropriating Plaintiff's Confidential Information, and requiring that Defendants immediately return any and all of Plaintiff's Confidential Information and property to Plaintiff;

B.    Permanently enjoining Defendant Yi from competing against Plaintiff in accordance with the Agreement for a period of two years following termination of her employment with Plaintiff, not including any time during which Defendant Yi is found to have been in violation of the Non-Competition Agreement, or any time incurred enforcing Yi's obligations thereunder;

C.    Permanently enjoining Defendant Yi from soliciting or attempting to solicit, directly or indirectly, Plaintiff's employees or full-time consultants and present or prospective clients of Plaintiff for the remaining contractual restricted period, not including any time during which Defendant Yi is found to have been in violation of her nonsolicitation obligations under the Non-Competition Agreement, or any time incurred enforcing Yi's obligations thereunder;

D.    Permanently enjoining Defendants from infringing Plaintiff's Works, and requiring Defendants to return to Plaintiff or destroy all copies of the Infringing Works,

Plaintiff's Works, and any other works that infringe Plaintiff's works in Defendants' possession, custody or control;

   E.  Ordering Defendants to account to Plaintiff for all Defendants' profits resulting from their use of Plaintiff's Confidential Information, the Infringing Works, Defendants' unfair competition, and Defendant Yi's wrongful solicitation, direct or indirect, of Plaintiff's students;

   F.  Ordering Defendants to file with the Court and to serve on Plaintiff's counsel, within fourteen (14) days after service of any injunction issued herein, a written certification or affidavit under oath setting forth in detail the manner in which Defendants have complied with the injunction;

   G.  Awarding Plaintiff compensatory and punitive damages and pre- and post-judgment interest in an amount to be determined at trial;

   H.  Awarding Plaintiff its attorney's fees and costs;

   I.  Granting Plaintiff such other and further relief as the Court deems just and proper.

       SILLS CUMMIS & GROSS P.C.
       Attorneys for Plaintiff
       Cambridge Educational Center, Inc.


       By:  s/ David L. Cook
         DAVID L. COOK
         WILLIAM R. TELLADO

       One Riverfront Plaza
       Newark, New Jersey 07102
       Telephone:  (973) 643-7000
       Fax:  (973) 643-6500
       dcook@sillscummis.com
       wtellado@sillscummis.com


Dated:  December 8, 2011

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy stated herein is not the subject of any other action currently pending in any court or any pending administrative proceeding or any pending arbitration proceeding, although a previous action was filed in the United States District Court for the Northern District of Georgia, Case No. 1:10-cv-04019-CC, which was dismissed for improper venue pursuant to Federal Rule 12(b)(3).  I further certify that I am unaware of any other action or arbitration proceeding contemplated and that there is no other party who should be, but has not been, joined in this action.

I certify under penalty of perjury that the foregoing is true and correct to the best of my present knowledge, information and belief.

Dated:  December 8, 2011

SILLS CUMMIS & GROSS P.C.
Attorneys for Plaintiff
Cambridge Educational Center, Inc.


By:   s/ David L. Cook
        DAVID L. COOK